AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| United States of America<br>v.<br><br>Luquay Zahir<br><br>*Defendant(s)* | Case No.<br>24-mj-7043 (EAP) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of __Atlantic__ in the _____ District of __New Jersey__, the defendant(s) violated:

| Code Section | Description of Offenses |
|---|---|
| 15 U.S.C. 645(a);<br>18 U.S.C. 1343 | False Statements to Influence the Small Business Administration;<br>Wire Fraud.<br><br>See Attachment A |

This criminal complaint is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

s/ Sarah Gordon-Howell
*Complainant's signature*

Sarah Gordon-Howell, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 4/29/2024

*Judge's signature*

City and state: District of New Jersey     Hon. Elizabeth A. Pascal, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Count 1
### (False Statements to Influence the Small Business Administration)

On or about July 9, 2020, in the District of New Jersey and elsewhere, defendant

**LUQUAY ZAHIR**

did knowingly make false statements for the purpose of obtaining for himself a loan and for the purpose of influencing in any way the action of the U.S. Small Business Administration.

In violation of Title 15, United States Code, Section 645(a).

## Count 2
## (Wire Fraud)

From in or about March 2021 through in or about August 2021, in the District of New Jersey and elsewhere, defendant

## LUQUAY ZAHIR

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures and sounds.

In violation of Title 18, United States Code, Section 1343.

**ATTACHMENT B**

I, Sarah Gordon-Howell, am a Special Agent of the Federal Bureau of Investigation. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including surveillance reports, business records, bank records, and other documents. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. At all times relevant to this Complaint:

***The Paycheck Protection Program and Economic Injury Disaster Loans***

a. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or about April 2020, Congress authorized over $300 billion in additional PPP funding. The PPP ended on or about May 31, 2021.

b. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the loan application, the small business was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

c. A PPP loan application had to be processed by a participating lender. If the PPP loan application was approved, the participating lender funded the PPP loan using its own money, which was 100% guaranteed by the U.S. Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and

the listed number of employees, was transmitted by the lender to the SBA while processing the loan.

    d. PPP loan proceeds could only be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be forgiven if the business spent the loan proceeds on these eligible expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

    e. The CARES Act also authorized the SBA to provide Economic Injury Disaster Loans ("EIDL") in the form of low-interest financing to help small businesses recover from the economic impacts of the COVID-19 pandemic. There were two types of COVID-19 EIDL funding: (i) COVID-19 EIDL loans which could be used for working capital and other normal operating expenses; and (ii) EIDL advance funds. The EIDL loans were not forgivable and borrowers were required to repay the principal and interest on the loans. The EIDL advances, on the other hand, were for a fixed amount and were not required to be repaid. The EIDL program ended on or about December 31, 2021.

    f. In order to obtain an EIDL loan or advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues, and cost of goods sold in the 12-month period preceding the disaster. In addition, the business entity must have been in operation on February 1, 2020. The amount of the EIDL awarded to a small business was determined, in part, on the information provided by the applicant about employment, revenue, and cost of goods of the company. The SBA directly issued any funds disbursed under an EIDL to the applicant company. A company could use EIDL funds for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If an applicant also obtained a loan under the PPP, the applicant company was prohibited from using EIDL funds for the same purpose as the PPP funds.

### *Luquay Zahir's EIDL Application*

2. Luquay Zahir ("ZAHIR") was a Ross Family Service Coordinator for the Atlantic City Housing Authority and Urban Redevelopment Agency. In that capacity, ZAHIR was required to coordinate available resources to meet the needs of Atlantic City's public housing residents.

3. On or about July 9, 2020, ZAHIR submitted an EIDL application to the SBA on behalf of a business he claimed to own, which he described in the application only as "Advertising Sales." In the application, ZAHIR represented that the business had ten employees and earned $100,000 in gross revenue

5

during the period from February 1, 2019 through January 31, 2020. ZAHIR further represented that the business incurred $10,000 in costs of goods sold over that same yearlong period. At the end of the application, ZAHIR certified under penalty of perjury that the information he provided in the application was "true and correct," even though he knew much of the material information he provided was false.

4. In the application, ZAHIR sought an EIDL loan, and an additional $10,000 EIDL advance.

5. In the application, ZAHIR provided the address of his residence in Atlantic City (the "Atlantic City Residence") as the business address. Surveillance conducted by law enforcement revealed that the Atlantic City Residence was a single-family apartment that was not suitable for a ten-employee business. Additionally, over two days of physical surveillance conducted at the Atlantic City Residence after the period for which ZAHIR sought EIDL funds, law enforcement did not observe any employees entering or exiting the Atlantic City Residence.

6. Internal Revenue Service ("IRS") records confirmed that ZAHIR did not file an IRS Form Schedule C[1] with the IRS in 2019. IRS records further confirmed that neither ZAHIR nor a business at the Atlantic City Residence reported income in the amount of $100,000 to the IRS in 2019.

7. Also, a search for business entity records filed with the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services ("Division of Revenue and Enterprise Services") showed that there were no business registration filings related to ZAHIR's purported advertising sales business.

8. In reliance on these material misrepresentations, on or about July 14, 2020, the SBA disbursed approximately $10,000—the full amount of the advance requested by ZAHIR—to a bank account held by ZAHIR (the "bank account"). Thereafter, ZAHIR caused multiple debits from the bank account, including, among others, payments to a variety of commercial merchants for what appear to be non-business related expenses and multiple ATM cash withdrawals. The SBA denied ZAHIR's application for the EIDL loan on the ground that ZAHIR had an unsatisfactory credit history.

---

[1] A Schedule C is a form used to report income or loss from a business that is attached to a tax filer's IRS Form 1040 annual income tax return.

### *ZAHIR's PPP Loan Application*

9.  On or about March 20, 2021, ZAHIR submitted a PPP loan application to a small business lender headquartered in New York, New York that was enrolled in the PPP and approved by the SBA to loan funds to small businesses through the PPP ("Lender-1"). In the application, ZAHIR, claimed he was an independent contractor, and requested a $20,400 PPP loan on behalf of business which ZAHIR identified in the application only as "Luquay Zahir." ZAHIR further claimed in the application that he was the sole owner of the business.

10. In the PPP loan application, Zahir provided the Atlantic City Residence in the section titled: "Business Address." Additionally, a purported Schedule C for 2019 was attached to the PPP loan application, that identified the business as: "Barber," and provided the Atlantic City Residence on the Schedule C in the section titled: "Business address." Further, the purported Schedule C indicated that Zahir's barbershop business earned $97,919 in profit in 2019.

11. The PPP loan application required ZAHIR to provide the "Total Amount of Gross Income" earned by the applicant's business in either tax year 2019 or 2020. Further, the SBA required the gross income stated by the applicant on the form to be reflected in a tax year 2019 or 2020 "IRS Form 1040, Schedule C." ZAHIR elected to provide purported gross income for tax year 2019 and, as discussed above, included with the application a document purporting to be a 2019 Schedule C.

12. Further as part of the PPP loan application, ZAHIR claimed that during tax year 2019, the business earned $97,920 in gross income, approximately the same amount claimed on the Schedule C as profit. ZAHIR further represented in the PPP loan application that he would use any funds disbursed by the SBA for payroll costs, and claimed that his business had one employee, himself. At the end of the application, ZAHIR certified that "the information in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law . . . ." Based on the reported gross income of $97,920 from tax year 2019, ZAHIR qualified for a PPP loan in the amount he had requested, that is $20,400.

13. In reliance on these material misrepresentations, on or about April 8, 2021, Lender-1 disbursed approximately $20,400—the full amount applied for—to the bank account. Thereafter, ZAHIR caused multiple debits from the bank account, including, among others, multiple hundred dollar or more ATM cash withdrawals, a $2,000 online banking transfer, multiple thousand-dollar or more transfers to cash applications, including Zelle and Cash App, and

multiple payments to commercial merchants for what appear to be non-business related expenses.

14.  IRS records confirmed that in 2019 neither ZAHIR nor the barbershop business reported income to the IRS in the amount reflected on the 2019 Schedule C attached to the PPP loan application.

15.  Also, a search for business entity records filed with the Division of Revenue and Enterprise Services showed that there were no business registration filings related to ZAHIR's purported barbershop business or related to his purported business as an "independent contractor".

16.  On or about August 6, 2021, ZAHIR signed a PPP Loan Forgiveness Application seeking to have the entire $20,400 loan forgiven. In the Loan Forgiveness Application, ZAHIR represented that he had spent $18,000 of the loan on payroll costs. On or about August 12, 2021, the SBA sent ZAHIR a letter authorizing complete loan forgiveness of his $20,400 PPP loan. Under SBA rules, ZAHIR was not required to repay the $10,000 EIDL advance.

17.  ZAHIR held no licenses in the field of cosmetology and hairstyling. In order to become a cosmetologist-hairstylist in New Jersey, the New Jersey Board of Cosmetology and Hairstyling (the "Board") required an applicant for licensing to complete 1,200 hours of instruction in the field at an approved school. Additionally, to become licensed in the field of cosmetology and hairstyling, a prospective candidate in New Jersey was required to pass an examination administered by the Board.

18. On or about August 13, 2021, the SBA electronically transferred by Automated Clearing House ("ACH") $20,471.40 to an account held by Lender-1, thereby forgiving ZAHIR's PPP loan, as addressed in paragraph 16, above. That ACH transaction was initiated by the SBA in Colorado and resulted in funds being wired from Colorado and received in an account at a financial institution in New York. Accordingly, that electronic transfer traveled in interstate commerce.

<u>s/Sarah Gordon-Howell</u><br>
Sarah Gordon-Howell, Special Agent<br>
Federal Bureau of Investigation

Special Agent Gordon-Howell attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(b)(2)(A) on this 29th day of April 2024.

_____<br>
Hon. Elizabeth A. Pascal<br>
United States Magistrate Judge

9